Case number 21-71-20. Darryl Lewis, appellant, versus Kalev Mutond, in his individual capacity only. Administrateur Général, Alliance Nationale de Renseignement, Democratic Republic of the Congo. Alexis Zambo-Mwamba, in his individual capacity only. Ministre de la Justice, Garde et Solidarité humaine, Democratic Republic of the Congo. Ms. Pena, for the appellant. Mr. Ward, for the accolades. Good morning. Whenever you're ready. Good morning. May it please the Court. The Due Process Clause is satisfied if the defendant has purposely directed his activities at residence of the forum such that he should reasonably anticipate being hailed into court there. In the handful of before this Court, the test is satisfied if a defendant intentionally targets an American to cause effects in the United States. The test is satisfied here. Defendants detained and tortured Mr. Lewis, an American veteran, to secure a false confession that he was an American mercenary sent to destabilize the DRC. Defendants publicly connected his detention with accusations that 600 United States citizens, mostly men, some ex-soldiers, had infiltrated the DRC to overthrow the government and even assassinate the Congolese president. It was reasonably foreseeable that defendants' torture of an American veteran to further claims of American election interference would result in a U.S. diplomatic response and extensive efforts in Washington and from the embassy to refute defendants' claims and negotiate Mr. Lewis's release. Now counsel, it appears that the District Court focused on the definition of the word mercenary and that was used throughout the complaint to conclude that the foreign officials did not intend to purposefully avail themselves in the United States. Do you see any issue with that focus? We do because it is inconsistent with the allegations of the complaint to understand the defendants' allegations of mercenary activity to be separate or distinct from their references to the United States. Defendant Twombly himself at an internationally covered press conference connected Mr. Lewis's detention to his narrative that 600 United States citizens had come to overthrow the government. It was not limited to Mr. Lewis alone, but he made a point that hundreds of U.S. citizens had come to the DRC for this purpose. But there was also reference to other mercenaries from other countries. There was one reference to South African mercenaries, I believe, but in paragraphs 32 through 37 of the complaint, the defendant was specifically talking about hundreds of Americans and he and his subordinates repeatedly referenced Mr. Lewis's nationality and his service in the U.S. military, both in their accusations towards Mr. Lewis himself and those they publicly said. And so their focus on his nationality while they made a passing reference to mercenaries from this broader narrative that hundreds of Americans were sent to infiltrate the DRC and even assassinate the president. But you don't allege any direct activity by foreign officials with respect to the United States. Paragraph 40 alleges that the United States embassy quickly stepped in and denied the allegations that the defendants were spreading, and paragraph 45 specifically states that there were extensive diplomatic efforts and negotiations to secure Mr. Lewis's release. So to that extent, there are allegations in the complaint of foreign official activity. In order for you to establish personal jurisdiction under LIVNOT, that line of cases, you need to show that Mr. Lewis was picked up and mistreated because he was the motive for the action that you're challenging, right? Which is exactly the kind of question that primary facts supporting a plausible inference and you need some reason to rule out a plausible alternative explanation. I mean, there's not a whole lot here. The plausible alternative explanation is the government doesn't like people who are working with the opposition. Right. I would point the court to the allegations of the complaint where defendants specifically referenced Mr. Lewis's nationality repetitively, that if it's really just about their association with Mr. Katoombi, the opposition candidate, then presumably it would not matter that Mr. Lewis was an American and that he had served in the United States military. Their accusations would sound more like 600 mercenaries have come to the DRC to overthrow the government and assassinate the president on behalf of an opposition candidate, but not specifically 600 United States citizens. And these accusations make a lot of sense given the political context that's discussed in the articles cited in paragraphs 32 and 34. The 600 citizens is probably the single best nugget you have. But I mean, there are also some statements about American and South African mercenaries, which that's the other way. The analysis here is whether the defendant's connection with the forum is sufficient to establish minimum contacts for purposes of the due process clause and whether defendants also created contacts with the DRC or even with South Africa in their actions. We don't have any allegations that they targeted Mr. Lewis because of his American citizenship and because of his service in the military that provide the minimum contacts with the United States. So the next step, assuming you can show targeting, the rest of your theory is that he was targeted because he was an American in order to draw the United States into a political dispute. In the Congo. And you're sort of trying to parallel live not, but it's not exactly the same. There the allegation is the Palestinians are upset that the U.S. is perceived to be favoring Israel and they're targeting Americans to drive the United States out of that conflict. So, I mean, why is it plausible that one party in the Congo would want to cause the world's superpower to be aligned with its rival? As alleged in paragraphs 32 and 34 of the complaint, there are two specific articles that were contemporaneous to these accounts about what was happening in the Congo at the time. The first was that the U.S. was calling on the Kabila regime to hold a free and fair election and the Kabila regime was resisting any attempt to have that election. So, in that context, where the U.S. was threatening sanctions, where President Obama was calling Mr. Kabila himself, that in that context, allegations of American election interference are really tied to the different purpose than in live not, but it's similar. I know this wasn't briefed, but I'm wondering if you have any thoughts on whether the Fifth Amendment due process standard here is the same as the 14th. So, I mean, in live not, this court said that they were equivalent standards, but after live not, the Supreme Court has suggested it's actually an open question whether the standards are the same under the Fifth and 14th Amendment. I'm wondering if you've thought about that issue. That's an interesting question. I unfortunately have not spent time on that particular issue, but we would be happy to submit supplemental briefing towards that question if it would be helpful. It's possible that there might be personal jurisdiction under the Fifth Amendment, even if it was not under the 14th. We would be happy to supplement our briefing and I think it's relevant to the Supreme Court statement in Burger King that under certain circumstances, considerations of fair play and substantial justice might weigh so heavily in favor of personal jurisdiction that a lesser showing of minimum contacts might be required. It's not the same exact policy considerations, but that there are circumstances perhaps under the Fifth Amendment, perhaps because fair play and substantial justice weighs so heavily in favor of jurisdiction where lesser showing might be required. It does seem that Mr. Lewis's strongest arguments for purposeful availment rest on some idea of entanglement, but I'm not sure that entanglement was properly preserved in the complaint. Can you point me to places where you think it was in the complaint? Specifically in paragraphs 40 and 45, the diplomatic response really illustrates that there was something more happening here than just an American abroad whose safety was in danger, but that the American diplomatic response went beyond securing his safety and release. That, combined with the political context discussed in the articles alleged in paragraphs 32 and 34, but if the court is unsatisfied with the allegations of the complaint as they are, we would request the ability to go back to the district court and either conduct jurisdictional discovery or we had asked to amend our complaint. In this case, the district court didn't reach that issue, but that would be something important because while the district court did dismiss without prejudice, here it's been six years since the events of the complaint. It's our understanding that the defendants would be difficult to locate and serve a second time. So for us, the dismissal without prejudice is tantamount to a dismissal. So you had sought leave to amend the complaint below? In the briefing we had done, I believe it's on paragraph 27, we asked for leave to amend or jurisdictional discovery. So whether the court wanted to remand to consider a renewed motion to amend or to consider the initial request, that would be within this court's discretion. Paragraph 40 just seems to say that the embassy disputed that Lewis was a mercenary. And then 45 is they made a lot of efforts to release him, seems not U.S. involvement in geopolitical affairs, but just sort of retail embassy services to help out American citizens in a tough situation. Right. So in paragraph 40, it references the exact statement that the embassy put out, which was longer than what's cited here. I believe it's stated in more detail in our reply brief. And that does, the embassy statement does go further than just say, this is an American who was there unarmed. But it makes a point to emphasize he was working for a private contractor, that he was unarmed at the time, sort of implying he had no connection actively to the U.S. government, that the U.S. was defending itself in light of these accusations that came at a time where the U.S. was putting political pressure on the D.R.C. to hold a free and fair election. Judge Childs. Nothing further. Thank you. We'll give you some rebuttal. Mr. Wirth, you're up. Good morning, your honors. May it please the court. The district court properly applied this court's settled precedent to the complaint to dismiss this suit for lack of personal jurisdiction. After six years of litigation, the plaintiff has yet to identify a single factual allegation in the complaint from which this court can draw the reasonable inference that these defendants intended their conduct or purposefully directed their that the foreign officials acted solely to influence electoral politics in the Democratic Republic. The complaint alleges that Mr. Lewis was arrested solely because of his association with Mr. Kutumbi, who was a candidate for president of the D.R.C. The complaint alleges that the foreign officials used plaintiff's detention. Would it be enough to show that Mr. Lewis was targeted because he was an American, but in order to influence D.R.C. politics, they have no delusions that America is going to send troops over to Congo, but they just think having the U.S. out there as the bad guy is helpful for their domestic political purposes. So they just target this one individual because he's an American and it's all directed at domestic politics. Is that enough? First of all, I push back on the very premise here. I do not believe that the complaint alleges that he was targeted. I understand. But assuming that he was, no, I don't think that's enough under this court's precedence in Price, Milani, and under the Supreme Court's precedent in Baldwin. I think those cases make clear that merely targeting American abroad is not a sufficient basis for personal jurisdiction. Instead, the defendant has to have purposefully directed his conduct to the United States and intended to have effects here in the forum. And I really do think that that follows from this court's precedence in Price, Milani. And it also follows from Walden in the sense that in Walden, the Supreme Court recognized that the defendant in Walden knew that the plaintiffs were from Nevada and knew that his conduct would have some effects in Nevada, but that wasn't enough. He had to have purposely directed his conduct to the forum. But I would like to push back just a little bit on the premise that Mr. Lewis was targeted because he's an American. I think that the complaint doesn't allege it, or you think it's not plausible under Iqbal or both? Well, I think, you know, I don't want to fall off the top of my head if the complaint says specifically he was targeted because he's American. I think that conclusory allegation may be included in the complaint. But I don't think that... I thought it was. I think it was. But I don't think that it follows from the actual, factual allegations of the complaint. And that's exactly what Iqbal requires. And this goes back to your question earlier. When facts pleaded in the complaint are capable of two very different interpretations, that's simply not enough to plead jurisdiction or state a claim or whatever have you. And I think here, the narrative here is that he was a foreigner, that his foreign status as a foreign mercenary was relevant, and it was relevant to creating this narrative. Now, I do understand Ms. Pena to be saying that it was relevant insofar as the United States is sort of a target. It was mentioned by these defendants also in the sense that the United States is sort of a boogeyman for electoral politics in the DRC. But I think it's important to recognize that there's a real difference between a politician making statements about the United States to a foreign audience and actually intending to provoke a response from the United States. The mere fact that some foreign politician might say that the United States or the CIA is interfering with their elections, I think we all understand that to mean to be an overture to local politics. It is not intended to have any effect in the United States. I'd also like to address Ms. Pena's statement about the State Department. For similar reasons, that's simply not enough to establish that the defendants purposefully directed their conduct at the United States because that's simply standard practice when Americans are detained abroad. The State Department does get involved in many, many cases. In fact, there's a whole section of the State Department's website devoted to what to do if you're detained abroad. The State Department offers consular services. If offering consular services, making statements about detention is sufficient to establish personal jurisdiction over high-ranking foreign officials, then that's going to be the case every time an American's involved in a drunken brawl in a pub in London or any other time that What do you make about the fact of not being allowed to move to amend the complaint? Because that's pretty standard at the trial court level. And then also, in many instances, judges will allow for jurisdictional discovery. So what are your arguments there or responses there? I think that in the district court, Mr. Lewis did not separately move to amend his complaint. He did not separately move for jurisdictional discovery. This was included as a few paragraphs at the end of his opposition brief. He doesn't explain in his opposition brief what he would do to amend his complaint. There's no attached supplemental filing that he thinks that he could use to cure the defects. And we've been making these arguments for six years now, from our motion to dismiss, to our reply, to our first time on appeal as an alternative argument here in this court. And we've alerted him to the errors in this complaint every single time. And he's never put forward specific information of any information that he would hope to discover or any allegations that he thinks would cure the defects in the complaint. So at this point, frankly, it is far too little and it is far too late. And beyond that, this court affords extremely broad discretion to district court's decisions on discovery issues and on discretionary decisions to allow amendment. And I think that Judge Lambert's decision here easily passes must. Unless the court has any further questions, I will cede my time. Judge Rath, Judge Childs? Nothing further. Okay. Thank you. Thank you, Your Honor. Just a few points in response. First, this is not an instance where there are generally statements being made that are anti-American in elections abroad, that their election success depends on aligning an opposition candidate with Americans generally or even with the West. Because here, there was an additional policy happening from the United States to encourage the elections in the DRC. This was happening in a political context where the U.S. was involved in efforts for the election. And that's discussed in the article cited in paragraph 32 and paragraph 34. And this is also distinct from cases where Americans are just detained abroad for similar reasons. The complaint clearly alleges in several places that Mr. Lewis was detained to further a narrative about American mercenary activity and election interference activity in the DRC. It was not that someone happened to find themselves in a bad situation while traveling abroad, but that Mr. Lewis was there as a security consultant. And while there, he was detained and tortured for six weeks as a part of a larger goal. So that's how it's distinct from those scenarios that opposing counsel mentioned. And then also with jurisdictional discovery, we do discuss in briefing the types of things we would be interested in seeing. First, communications between defendants about what was happening in the DRC and Mr. Lewis's detention. And also a deposition of the defendants to understand what the effects they could reasonably foresee taking place in the United States as a result of their actions. You're seeking communications between the foreign equivalent of the attorney general and the head of the internal security forces. Under domestic law, we would have a pretty high burden before you get those communications, even for U.S. officials. Right, and that's a burden we would have to deal with, certainly, on jurisdictional discovery. But as a preliminary matter, whether we have shown that we have a good faith belief that discovery could lead to more information in support of personal... I'm sorry, I thought you said you've made an adequate showing to justify discovery. We have a good faith belief and that it would produce something and that what we would be looking at is to have a deposition of the defendants for communications from them about Mr. Lewis's detention. You mentioned earlier that you would have a problem serving them if we were allow you to amend the complaint. So how do you plan on doing the discovery? They are represented by counsel currently and we would certainly look forward to working closely with counsel to sort out the legal issues. But serving notices of discovery and things like that will be much easier in the current cases they're represented by counsel. Anything else, Judge Charles? Nothing else, thank you. Okay, thank you very much. The case is submitted. Thank you.
judges: Katsas, Rao, Childs